UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS SEGURA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL MCDONALD, et al.,<br><br>    Defendants. | No. 2:13-cv-0393 AC P<br><br><br>ORDER and FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on the second amended complaint against defendant McDonald, the warden of High Desert State Prison ("HDSP"), and defendant Villanueva, a counselor at HDSP, for violations of plaintiff's rights under the Eighth Amendment. ECF No. 32.

I.    <u>Background</u>

Plaintiff's second amended complaint was filed on April 4, 2014.[1] ECF No. 32 at 19. In

---

[1] Since plaintiff is proceeding pro se, he is afforded the benefit of the prison mailbox rule. See <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988). Under the prison mailbox rule, the date plaintiff signed the complaint will be considered his filing date absent evidence to the contrary. See <u>Jenkins v. Johnson</u>, 330 F.3d 1146, 1149 n. 2 (9th Cir. 2003) (date petition is signed may be considered earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule).

1  his complaint, plaintiff alleges that his constitutional rights were violated by defendants' decision
2  in March 2011 to order plaintiff to share a cell with inmate Stephen Horkey, who allegedly has a
3  history of violent assaults on previous cellmates. Id. at 4-5. On September 24, 2011, Horkey
4  assaulted plaintiff in their cell, causing him severe injuries. Id. at 3. Plaintiff alleges that both
5  defendants knew of Horkey's violent history.  Nevertheless, defendant McDonald took no action
6  to ensure Horkey remained single-celled and defendant Villanueva participated in moving Horkey
7  from single cell to double cell status. Id. at 5.

8  On May 15, 2015, defendants filed a motion for summary judgment and a motion to file
9  documents under seal in support of their summary judgment motion. ECF Nos. 39, 41. Plaintiff
10 requested appointment of counsel, ECF No. 43, which the court denied by order dated June 16,
11 2015, ECF No. 44. Plaintiff requested two extensions of time to oppose defendants' summary
12 judgment motion, which the court granted. On July 22, 2015, plaintiff filed objections to
13 defendants' motion for summary judgment, a motion to compel discovery, and a motion
14 requesting that the court accept his objections and motion to compel. ECF Nos. 47, 48. On
15 August 4, 2015, defendants filed their reply to plaintiff's opposition to their motion for summary
16 judgment. ECF No. 49.

17 This order addresses: (1) plaintiff's motion to accept his objections and his motion to
18 compel discovery, ECF No. 48; (2) plaintiff's motion to compel discovery, ECF No. 48 at 4; (3)
19 defendant's motion for summary judgment, ECF No. 39; and (4) defendants' request to file
20 documents under seal, ECF No. 41.

21  I.  Plaintiff's Motion to Accept Objections and Motion to Compel Discovery

22 Plaintiff requests that the court accept his objections to defendants' motion for summary
23 judgment and his motion to compel discovery, without service upon counsel for defendants. ECF
24 No. 48 at 1. In his motion, plaintiff explains that despite being granted two extensions of time to
25 file his objections, he still has not been able to access the law library to make copies of his
26 documents. Id. at 2.

27 The court notes that plaintiff's objections were timely filed with the court and defendants
28 have already responded to plaintiff's opposition. See ECF No. 49 at 1. The court will therefore

make a one-time exception and deem plaintiff's objections and motion to compel properly filed, despite his failure to be in strict compliance with the service rules. Plaintiff's request to accept his objections and motion to compel is granted.

II.     Plaintiff's Motion to Compel Discovery

Plaintiff seeks to compel production of inmate Horkey's record while in prison. ECF No. 48 at 4. Plaintiff explains that he sought production of "any and all documents related to inmate Horkey and his status as a single-cell or double-cell for the duration of his incarceration in the CDCR," and that defendants "correctly" denied release of Horkey's records due to confidentiality issues. Id. at 4-5. Plaintiff contends that "[i]f such documents existed and were available to [defendants] McDonald and/or Villanueva prior to Segura's assignment to Horkey's cell, then plaintiff's case is proven." Id. at 5. Plaintiff asserts that the court should have granted him temporary appointment of counsel to obtain and review the requested documents and determine their probative value. ECF No. 48 at 5. However, since the court denied plaintiff's request for counsel, plaintiff now asks the court to produce the confidential records to plaintiff. Id.

Plaintiff is advised that deadline for the completion of discovery and the filing of any motion to compel was February 20, 2015. Plaintiff's motion to compel was filed on July 22, 2015, five months after the deadline expired. While plaintiff's motion makes no specific mention of its untimeliness, plaintiff appears to argue that he filed his motion to compel because the court denied his request for counsel. However, plaintiff's request for counsel was not filed until at the earliest May 8, 2015,[2] almost three months after the close of discovery, and therefore does not adequately explain the delay. Plaintiff has not shown good cause for the court to overlook the untimeliness of his motion. Accordingly, the motion to compel will be denied as untimely.[3]

////

---

[2] The date printed on the proof of service attached to plaintiff's request for counsel is May 8, 2015, but the handwritten date is June 8, 2015. ECF No. 43 at 24. The motion itself is dated June 8, 2015. Id. at 1.

[3] Below, the court concludes that defendants are entitled to summary judgment on grounds of administrative non-exhaustion. Accordingly, plaintiff's discovery motion is also denied for the alternative reason that it is moot in light of this disposition.

III. Defendants' Motion for Summary Judgment

Defendants filed a motion for summary judgment asserting that they are entitled to summary judgment because: (1) defendants did not violate plaintiff's constitutional rights under the Eighth Amendment; (2) plaintiff failed to exhaust administrative remedies prior to filing suit; (3) defendants are entitled to qualified immunity; and (4) the Eleventh Amendment bars plaintiff's claims against defendants in their official capacities. ECF No. 39-2. Because a finding that plaintiff failed to exhaust administrative remedies prior to filing suit would render the other issues moot, the court will first address defendants' argument that plaintiff has not satisfied the pre-suit administrative exhaustion requirement.

A. Arguments of the Parties Pertaining to Exhaustion

i. Defendants' Argument

Defendants argue that summary judgment is appropriate because plaintiff failed to exhaust administrative remedies prior to filing suit. ECF No. 39-2 at 19. Specifically, defendants contend that plaintiff "did not file, let alone exhaust, any administrative appeal regarding the allegations presented in his complaint." Id. According to defendants, the two grievances attached to plaintiff's complaint could not serve to exhaust plaintiff's claims because neither grievance names defendant McDonald or defendant Villanueva, as required by the applicable regulations. Defendants further argue the later-filed grievance could not serve to exhaust plaintiff's claims because substantively it concerns a cancelled grievance,[4] rather than the allegations in plaintiff's lawsuit.

ii. Plaintiff's Opposition

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."

////

---

[4] As will become apparent, the grievance defendants refer to concerns the cancellation of the grievance concerning the allegations in plaintiff's complaint.

Plaintiff has also failed to file a separate statement of disputed facts, as required by Local Rule 260(b).

It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on another ground by Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to the "handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id.

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support will be considered.

In opposition, plaintiff first contends that his initial grievance should not have been cancelled as untimely. ECF No. 47 at 2. As explained in plaintiff's verified complaint, the severe injuries plaintiff sustained on September 24, 2011 rendered him "physically and cognitively" unable to file a grievance within 30 days of the assault by inmate Horkey. ECF No. 32 at 4. Plaintiff, who speaks only Spanish and is illiterate in both Spanish and English, was not able to find someone to help him file a grievance until 2012.[5] ECF No. 32 at 4. When plaintiff finally filed his initial appeal, it was cancelled as untimely. Id. Plaintiff asserted "via assistant" that his

---

[5] Plaintiff states that he filed his grievance in 2013, ECF No. 32 at 4, but his grievance and the related cancellation notice suggest that plaintiff intended to write "2012" rather than "2013," see ECF No. 1 at 37-40.

1  "medical interventions," inability to speak English, and illiteracy prevented him from filing a
2  timely grievance, but prison staff rejected his argument and refused to process his grievance. Id.
3  Plaintiff asserts that because of the "numerous difficulties" he faced in filing a timely grievance,
4  and prison staff's failure to assist him, plaintiff's failure to file a grievance within 30 calendar
5  days of September 24, 2011 should be excused. Id.

6  Plaintiff goes on to assert that he exhausted the administrative remedies that were
7  available to him. See ECF No. 47 at 3.  Specifically, plaintiff explains that after he was informed
8  that his initial grievance was "untimely and could not be processed," he "appealed that decision
9  and was, again, informed that this was not appealable due to time delay." Id.  Plaintiff argues that
10 "[w]hen an inmate is told an appeal is completed and no longer able to be pursued, then the
11 appeal is exhausted." Id.  Because no further remedies were available once his appeal was
12 rejected as untimely, plaintiff asserts that he exhaustion process was complete.

13                          iii.   Defendants' Reply

14 In reply, defendants emphasize that neither of the appeals plaintiff filed named defendant
15 McDonald or defendant Villanueva.  ECF No. 49 at 4-5.  Accordingly, defendants contend that
16 even if plaintiff had been permitted to pursue either appeal to the third level of review, plaintiff
17 would still not have satisfied the exhaustion requirement because he was required to name each
18 person involved in the alleged violation of his rights. Id. at 5.

19                    B.  Legal Standards for Exhaustion
20                          i.  Prison Litigation Reform Act

21 Section 1997(e) (a) of Title 42 of the United States Code provides that "[n]o action shall
22 be brought with respect to prison conditions under section 1983 of this title, ... until such
23 administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e)(a) (also known as
24 the Prison Litigation Reform Act ("PLRA")).  The PLRA requires that administrative remedies be
25 exhausted prior to filing suit. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

26 Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones
27 v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an
28 available administrative remedy, and that the prisoner did not exhaust that available remedy."

Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  "[T]here can be no 'absence of exhaustion' unless *some* relief remains available." Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, it must be "capable of use; at hand." Albino, 747 F.3d at 1171.

A prisoner must exhaust his administrative remedies for constitutional claims prior to asserting them in a civil rights complaint.  42 U.S.C. § 1997e(a); McKinney v. Carey, 311 F.3d at 1199.  If a prisoner exhausts a claim after bringing it before the court, his subsequent exhaustion cannot excuse his earlier failure to exhaust.  Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) ("[A prisoner] may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed.  It would be inconsistent with the objectives of the statute to let him submit his complaint any earlier than that."); McKinney, 311 F.3d at 1199 (a prisoner does not comply with exhaustion requirement by exhausting available remedies during the course of litigation).

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, the proper remedy is dismissal of the claim without prejudice.  Id. at 1200.

  ii.  California Regulations Governing "Exhaustion" of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules.  Woodford v. Ngo, 548 U.S. 81 (2006).  This review process is set forth in California regulations.  Those regulations allow a prisoner to "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

An inmate must file the initial appeal within 30 calendar days of the action being appealed, and he must file each administrative appeal within 30 calendar days of receiving an adverse decision at a lower level.  15 Cal. Code Regs. § 3084.8(b).  The appeal process is initiated by the inmates filing of a "Form 602," the "Inmate/Parolee Appeal Form," "to describe the specific issue under appeal and the relief requested." Id. § 3084.2(a).  As of January 28, 2011, an inmate must "list all staff members involved" and "include the staff member's last name, first

1  initial, title or position, if known, and the dates of the staff member's involvement in the issue
2  under appeal." Id. § 3084.2(a)(3). If the inmate does not have this identifying information, he
3  must "provide any other available information that would assist the appeals coordinator in making
4  a reasonable attempt to identify the staff member(s) in question." Id.

5  Each prison is required to have an "appeals coordinator" whose job is to "screen all
6  appeals prior to acceptance and assignment for review." Cal. Code Regs. tit. 15, § 3084.5(b).
7  The appeals coordinator may refuse to accept an appeal, and she does so either by "rejecting" or
8  "canceling" it. Id. § 3084.6(a). "Cancellation" is reserved for those appeals which the inmate
9  cannot simply correct. For example, an appeal can be cancelled if time limits for submitting the
10 appeal have been exceeded. See id., § 3084.6(c)(1) & (4). Upon "cancellation" of the appeal, the
11 inmate's only recourse, if he still wishes to pursue it, is to show that the reason given for the
12 cancellation was inaccurate or erroneous, or that "new information" now makes it eligible for
13 review. See id., 3084.6(a)(3) (cancelled appeal may later be accepted "if a determination is made
14 that cancellation was made in error or new information is received which makes the appeal
15 eligible for further review").

16  According to the regulations, "a cancellation or rejection decision does not exhaust
17 administrative remedies." Id. § 3084.1(b). If the appeals coordinator allows an appeal to go
18 forward, the inmate must pursue it through the third level of review before it is deemed
19 "exhausted." Id. § 3084.1(b) ("all appeals are subject to a third level of review, as described in
20 section 3084.7, before administrative remedies are deemed exhausted").

21                    C. Summary Judgment Standards

22  Summary judgment is appropriate when the moving party "shows that there is no genuine
23 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
24 Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden
25 of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627
26 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The
27 moving party may accomplish this by "citing to particular parts of materials in the record,
28 including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] Plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[6]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact

---

[6] Plaintiff filed a verified complaint in this case. See ECF No. 32.

"that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion …." Fed. R. Civ. P. 56(e)(2).

////

////

D.  Undisputed Material Facts Pertaining to Exhaustion

- The allegations in plaintiff's second amended complaint concern events that occurred while plaintiff was incarcerated at High Desert State Prison ("HDSP"). ECF No. 32 at 2.

- At all times relevant to the complaint, defendant McDonald was the warden at HDSP and defendant Villanueva was a correctional counselor at HDSP.[7] Defendants' Statement of Undisputed Facts ("Facts"), ECF No. 39-3 ¶ 2.

- Plaintiff's alleges that "on or about March 2011," defendants McDonald and Villanueva made the decision to require inmate Horkey to accept a cellmate, despite knowing of Horkey's history of violence towards cellmates. ECF No. 32. Plaintiff moved into Horkey's cell on April 2, 2011. Facts ¶ 4. Plaintiff alleges that on September 24, 2011, Horkey attacked plaintiff in their cell, stabbing plaintiff in the head, neck, and stomach. ECF No. 32 at 2-5.

- In his deposition, plaintiff states that following the attack on September 24, 2011, plaintiff was taken by helicopter to an outside hospital where he remained for three to four days. Plaintiff states that when he returned to HDSP, he stayed in HDSP's hospital for approximately two weeks. Declaration of Joanna Hood, ECF No. 39-5 Exh. A at 25-26.

- Plaintiff alleges that he speaks only Spanish and is illiterate in both Spanish and English. ECF No. 32 at 4.

Plaintiff's Initial Appeal

- The first grievance plaintiff filed regarding the attack by inmate Horkey is attached as an exhibit to plaintiff's original complaint, ECF No. 1. ECF No. 32 at 8; Facts ¶¶ 44, 47.

- The signature date on this appeal is July 15, 2012. ECF No. 1 at 38, 40.

- The stamp on the initial appeal indicates that it was received on September 4, 2012. ECF No. 1 at 38, 40.

- In this appeal, plaintiff states that he is grieving "reckless committee action, resulting in [his] being stabbed." ECF No. 1 at 38.

- Plaintiff further alleges in the appeal that on September 24, 2011, he was stabbed by his cellmate, Stephen Horkey. Plaintiff alleges that five to six months prior to September 24, 2011, "committee members (Does 1-10)" forcibly removed inmate

---

[7] Where, as here, defendant's Undisputed Facts are supported by the submitted evidence, and not contested by plaintiff, the court cites only to the relevant paragraph of defendant's Undisputed Facts.

11

Horkey from single cell status. Horkey made threats to "committee members and possibly other staff" that he would violently assault anyone they put into his cell. Plaintiff alleges that "committee members" knew about the substantial risk of

- harm, yet disregarded Horkey's threats, prior violence, and the safety of his next cellmate, which turned out to be plaintiff. ECF No. 1 at 38, 40.

- In the appeal, plaintiff also states that the "reason for delay" is that plaintiff is a Spanish speaking inmate with little education, who is untrained in law. "Until now, [plaintiff] has not had anyone to help him with this 602." ECF No. 1 at 38.

- Plaintiff's grievance does not name defendant McDonald or defendant Villanueva. See ECF No. 1 at 38-40.

Response to Plaintiff's Initial Appeal

- On September 4, 2012, plaintiff's initial grievance was cancelled as untimely. ECF No. 1 at 37.

- The 602 Screening Form states, "[t]this appeal is being cancelled due to the time constraints. Incident date was 9-24-11." ECF No. 1 at 37.

- On this form, the box "[t]ime constraints not met" is checked. ECF No. 1 at 37.

Plaintiff's Second Appeal

- Plaintiff submitted a second appeal, complaining that his first appeal was improperly cancelled "due to time constraints." See ECF No. 1 at 33.

- The signature date on the second appeal is October 3, 2015. ECF No. 1 at 33.

- The stamp on the second appeal indicates that it was received on October 15, 2012. See ECF No. 1 at 33.

- In this appeal, plaintiff states that he was stabbed by his then-cellmate as a direct result of "committee action." Plaintiff explains that on July 15, 2012, an English-speaking inmate assisted plaintiff in preparing his 602 appeal. Plaintiff asserts that he speaks only Spanish, is untrained in the law, has a "low grade point average," and was unable to prepare his own 602 until now. For these reasons, plaintiff asserts that the HDSP appeals coordinator should process his "original 602." ECF No. 1 at 33, 35.

Response to Plaintiff's Second Appeal

- The 602 Screening Form responding to plaintiff's second grievance is dated October 16, 2012. See ECF No. 1 at 32.

- On this form, the box "[t]ime constraints not met" is checked.  ECF No. 1 at 32.

- In the "comments" section, the form reads, "your appeal exceeds the prescribed time constraints 9-4-12 to 10-15-12."  ECF No. 1 at 32.

- Plaintiff did not submit a grievance concerning the allegations in this lawsuit to the third level of review.  Facts ¶ 50; ECF No. 47 at 3.

### E.  Discussion

It is undisputed in this case that plaintiff's initial grievance was cancelled and that plaintiff did not pursue any grievance concerning the allegations in his complaint to the third level of review, as required by the applicable regulations.  See 15 Cal. Code Regs. § 3084.1(b). Therefore, plaintiff did not properly exhaust administrative remedies prior to filing suit.  See Woodford v. Ngo, 548 U.S. 81 (2006) (exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules).  Accordingly, the only legal question to be resolved is whether administrative remedies were effectively unavailable to plaintiff.  See Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010).

Since defendants have met their initial burden of establishing non-exhaustion, the burden now shifts to plaintiff to come forward with evidence showing that a genuine dispute of material fact regarding exhaustion exists or that something in his particular case made the existing administrative remedies unavailable to him.  See Albino, 747 F.3d at 1172.  In order to meet this burden, plaintiff challenges the "screen out" of his appeals.  The propriety of the screen out matters because, if prison officials improperly screened out his appeal, he could not properly complete the grievance process and administrative remedies would be effectively unavailable. See Sapp, 623 F.3d at 822–23).  To satisfy this exception to exhaustion, the prisoner must show: "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations."  Id. at 823–24.

Defendants argue that even if plaintiff had pursued his initial grievance through all levels of review, it would not have sufficed to exhaust plaintiff's claim because the grievance did not

13

identify defendants by name, as required by the regulations in effect at the time. However, the requirement that a prisoner identify prison staff by name is not absolute. See 15 Cal. Code Regs. § 3084.2(a)(3). Rather, the regulations provide that an inmate who "does not have the requested identifying information . . . shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Id. Here, plaintiff stated in his appeal that he was grieving the actions of the "committee members" who made the decision, "five or six months prior" to September 24, 2011, to remove inmate Horkey from single cell status and require him to accept a cellmate. Thus, although plaintiff did not identify any individuals by name, he provided the appeals coordinator with reasonable means to identify the staff members in question, i.e. the members of the committee that decided in March or April 2011 to require inmate Stephen Horkey to accept a cellmate. If there were any evidence defendants were part of the committee that made this decision, the court would find this description sufficient to satisfy the identification requirement. See, e.g., Catanzarite v. Pierce, No. 1:12-CV-01502-LJO, 2015 WL 3774285, at *9 (E.D. Cal. June 16, 2015) report and recommendation adopted, No. 1:12-CV-01502-LJO, 2015 WL 4756094 (E.D. Cal. Aug. 11, 2015) (finding plaintiff's description sufficient to allow the appeals coordinator to identify the staff members involved, where plaintiff challenged the action of a committee, provided the date of the challenged decision, and attached at least one page from the committee hearing). Here, however, there is no evidence that defendants were part of this committee. Regardless, the issue is moot because plaintiff's initial grievance was properly cancelled as untimely, as discussed below.

Prisoners are required to file their initial grievance within 30 calendar days of the action being appealed. 15 Cal. Code Regs. § 3084.8(b). In the present case, the parties appear to agree that plaintiff's initial grievance was due within 30 calendar days of September 24, 2011, the day inmate Horkey attacked plaintiff in their cell. However, plaintiff did not file his initial grievance until September 4, 2012, almost one year after the attack.[8] Plaintiff admits that his grievance was

---

[8] Plaintiff's initial grievance was stamped "received" on September 4, 2012, yet the signature (continued…)

untimely in that it was not filed within 30 days of September 24, 2011, but argues that the untimeliness should have been excused due to the "numerous difficulties" plaintiff faced in filing a timely grievance. Plaintiff identifies those difficulties as his medical injuries resulting from the September 24, 2011 attack, his inability to speak English, his illiteracy in both English and Spanish, and his inability to obtain help from prison staff in filing a grievance.

Although plaintiff does not specify how long his medical injuries contributed to his inability to file a grievance, the court notes that in his deposition, plaintiff stated that he was hospitalized for approximately 18 days following the September 24, 2011 assault. See ECF No. 39-5 at 25-26. However, even assuming that plaintiff's medical injuries prevented him from filing a grievance within 30 days of September 24, 2011, plaintiff has not provided adequate justification for the many subsequent months of delay that followed.

In his complaint, plaintiff alleges that "after the assault, he was unable to obtain help in filing an Inmate Appeal Form 602 (602) from HDSP staff." ECF No. 32 at 4. While plaintiff makes a general allegation that prison staff failed to assist him, plaintiff does not provide any details as to his efforts to obtain assistance, nor does he allege that his requests for assistance were denied. Under these circumstances, there is no basis for the court to conclude that plaintiff took "reasonable and appropriate steps to exhaust" his claim. See Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) (holding that prisoner's failure to timely exhaust was excused where "he took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault but by the Warden's mistake"). Furthermore, to the extent plaintiff argues that his illiteracy and inability to speak English "further excuse addition[al] months of delay," the court finds that these circumstances, which are common to many prisoners, are not sufficiently extraordinary to excuse plaintiff's almost eleven-month delay in filing his initial grievance. It is plaintiff's burden to put forth evidence that administrative remedies were

---

date on the grievance is July 15, 2012. See ECF No. 1 at 38. Plaintiff does not attempt to explain the discrepancy between the dates and does not argue that he submitted the grievance in July 2012 as opposed to September 2012. Even assuming plaintiff's initial grievance was submitted on July 15, 2012, it would still have been submitted over nine months after the September 24, 2011 incident and thus does not change the court's analysis with respect to timeliness.

unavailable to him such that he should be excused from the exhaustion requirement. See Albino, 747 F.3d at 1172. Plaintiff has not met that burden here.

For the above reasons, the undersigned finds that plaintiff did not comply with the pre-suit exhaustion requirement. It is therefore recommended that defendants' motion for summary judgment be granted and plaintiff's complaint be dismissed without prejudice.

Because the court finds that plaintiff failed to exhaust administrative remedies prior to filing suit, the court does not reach the merits of defendants' motion. For the same reasons, defendants' motion to file documents under seal in support of their motion for summary judgment, ECF No. 41, is denied as moot, as the documents pertain only to the merits of plaintiff's claim.

## IV.    Summary

Plaintiff's motion to accept his objections and motion to compel is granted.

Plaintiff's motion to compel is denied as untimely because the motion had to be filed by February 20, 2015 and plaintiff did not explain why he filed the motion over five months late.

The court recommends that defendants' motion for summary judgment be granted on the grounds that plaintiff did not properly exhaust his administrative remedies before he filed this lawsuit. The court finds that even if plaintiff's injuries prevented him from filing a grievance within 30 days of being attacked by inmate Horkey, plaintiff's illiteracy and inability to speak English do not justify the eleven-month delay in filing his first grievance. Plaintiff also did not provide the court with enough information about why he was unable to get help from prison staff in filing his grievance to excuse the time delay.

If plaintiff disagrees with the court's recommendation, he must file his objections within twenty-one (21) days.

## V.    Conclusion

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to accept his objections and motion to compel (ECF No. 48 at 1) is granted;

2. Plaintiff's motion to compel (ECF No. 48 at 4) is denied;

3. Defendants' motion to file documents under seal (ECF No. 41) is denied as moot; and

4. The Clerk of the Court is directed to randomly assign a United States District Judge to this action.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 39) be granted on the grounds that plaintiff's failed to exhaust administrative remedies; and

2. Plaintiff's second amended complaint (ECF No. 32) be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 3, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE